# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jose J.O.E., | File No. 25-cv-3051 (ECT/DJF) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; Department of Homeland Security; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; Immigration and Customs Enforcement; Sirce Owen, *Acting Director for Executive Office for Immigration Review*; Executive Office for Immigration Review; Peter Berg, *Director, Ft. Snelling Field Office Immigration and Customs Enforcement*; and Ryan Shea, *Sheriff of Freeborn County*, | |
| Respondents. | |

David L. Wilson, Sierra Paulsen, and Cameron Lane Youngs Giebink, Wilson Law Group, Minneapolis, MN, for Petitioner Jose J.O.E.

Friedrich A. P. Siekert and Ana H. Voss, United States Attorney's Office, Minneapolis, MN, for Respondents Pamela Bondi, Kristi Noem, Department of Homeland Security, Todd M. Lyons, Immigration and Customs Enforcement, Sirce Owen, Executive Office for Immigration Review, and Peter Berg.

David John Walker, Freeborn County Attorney's Office, for Respondent Ryan Shea.

Petitioner Jose J.O.E., a Honduran citizen who has lived in the United States since

2014 without authorization, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  On

June 23, 2025, Jose was arrested and detained by Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1226. An immigration judge denied Jose's request for a bond hearing. Though a bond hearing is available under § 1226 (the statute under which ICE arrested Jose), the immigration judge found that Jose's detention was governed instead by 8 U.S.C. § 1225. No bond hearing is available under § 1225. In this habeas proceeding, Jose seeks a bond hearing.

Jose has taken two procedural paths to challenge the immigration judge's decision: (1) he appealed the decision to the Board of Immigration Appeals and (2) he filed this case. In this case, Jose filed an emergency motion for a temporary restraining order seeking to enjoin Respondents from moving him outside the District of Minnesota and requiring that Respondents give him a bond hearing under 8 U.S.C. § 1226(a)(2)(A) within 7 days. Jose's motion for a temporary restraining order was granted insofar as Respondents were enjoined from moving Jose outside the District of Minnesota until August 19, 2025. *See* ECF Nos. 12, 15. Respondents then agreed, with some qualifiers, not to move Jose outside the District of Minnesota "until September 5, 2025, or the resolution of the pending habeas matter, whichever comes earlier." *See* ECF No. 18. Further briefing was ordered. *See* ECF No. 19.

In its current posture, the case presents the narrow legal question of whether a non-citizen arrested and detained under authority of 8 U.S.C. § 1226 is subject to § 1226's discretionary detention scheme rather than § 1225(b)(2)'s mandatory detention provision. On the undisputed factual record here, § 1226's discretionary detention scheme applies.

The petition will be granted in part, and Respondents will be ordered to provide Jose with a bond hearing under 8 U.S.C. § 1226(a) within 7 days of this Order.

I

Begin with the statutory and regulatory framework. "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Except as provided by § 1226(c),[1] the Attorney General "may release the alien on . . . bond of at least $1,500 . . . or . . . conditional parole." 8 U.S.C. § 1226(a)(2). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 847 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also* 8 C.F.R. § 1003.19 (providing framework for requesting a bond determination, and stating "[c]onsideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding").

---

[1]    Section 1226(c) relates to detention of certain non-citizens who are inadmissible or deportable because they have committed or were sentenced for certain criminal offenses. No one argues that § 1226(c) applies to Jose.

Section 1225 is different. It applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival," who is "deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). Such applicants for admission "fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id*. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," as well as "certain other aliens designated by the Attorney General in his discretion." *Id*. (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)). No one argues that § 1225(b)(1) applies here. "Section 1225(b)(2) is broader," and it "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," with specific exceptions. *Id*. (citing §§ 1225(b)(2)(A), (B)). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process" unless they "indicate[] either an intention to apply for asylum . . . or a fear of persecution," in which case they are referred for an asylum interview. *Id*. (quoting § 1225(b)(1)(A)(ii)). And "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see*

*Jennings*, 583 U.S. at 287–88.  Importantly, "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297.[2]

## II

Jose is a citizen of Honduras who entered the United States without inspection near McAllen, Texas, on or about February 1, 2014.  Pet. [ECF No. 1] ¶¶ 32–33; *see* ECF Nos. 22-1 at 1, 22-6 at 1.  Jose has no criminal record, and he had no contact with immigration authorities in the United States until June 23, 2025, when he was taken into custody by ICE officers in Burnsville, Minnesota.[3]  Pet. ¶¶ 34–35; *see* ECF No. 22-6 at 3.  Jose was a passenger in a vehicle stopped by Homeland Security officers conducting "fugitive operations" in the area, and "it was determined that [he] was present in the United States illegally."  ECF No. 22 ¶¶ 5–6.  Jose is currently detained at the ICE detention center in Albert Lea, Minnesota.  Pet. ¶¶ 12–13.  Respondents are various federal officials charged with enforcing the nation's immigration laws and the Sheriff of Freeborn County, who

---

[2]    Under § 1225 and § 1226, "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'"  *Jennings*, 583 U.S. at 288.  Parole is not at issue here.

[3]    According to Respondents, the immigration history in Jose's Form I-213 Record of Deportable/Inadmissible Alien contains a "scrivener's error" and "information regarding another individual."  ECF No. 22 ¶¶ 12, 17.  In particular, Jose's Form I-213 states that he "is amenable to removal from the United States under section 237(a)(1)(B) of the Immigration & Nationality Act [8 U.S.C. § 1227(a)(1)(B)], as a non-immigrant overstay," and notes, in his immigration history, that "[o]n December 21, 2023, [Jose] was to board an outbound flight out of the United States, but did not board the flight."  ECF No. 22-6 at 3.  Respondents admit that these "references to a non-immigrant admission or planned departure are in error and do not pertain to [Jose]."  ECF No. 22 ¶ 12.

manages the Freeborn County Law Enforcement Center where the Albert Lea ICE detention center is located. *Id.* ¶¶ 14–22.

Jose's immigration/arrest records provide important background to his petition. On the day he was apprehended, Respondents served Jose with a Form I-862 Notice to Appear and Form I-200 Warrant for Arrest. *See* ECF Nos. 22 ¶¶ 7–8, 22-1, 22-2. The Warrant for Arrest was directed to: "Any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." ECF No. 22-2 at 1. The Notice to Appear states that Jose was subject to removal from the United States pursuant to the following provision of law:

> 212(a)(6)(A)(i) of the Immigration and Nationality Act [8 U.S.C. § 1182(a)(6)(A)(i)], as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

ECF No. 22-1 at 1. The Notice to Appear ordered Jose to appear before the immigration court at Fort Snelling on July 9, 2025. *Id.* Jose's Form I-218 Record of Deportable/Inadmissible Alien, dated June 23, 2025, lists Jose's "Current Criminal Charges" resulting from his apprehension as "8 USC 1325A1 – ENTRY WITHOUT INSPECTION, TIME OR PLACE NOT DESIGNATED," and his "Current Administrative Charges" as "212a6Ai [8 U.S.C. § 1182(a)(6)(A)(i)] – ALIEN PRESENT WITHOUT ADMISSION OR PAROLE." ECF No. 2-3 at 1–2. Finally, Jose's Form I-286 Notice of Custody Determination, also dated June 23, 2025, completed by ICE and read to Jose in Spanish, stated that "pending a final administrative determination in [his] case," Jose was

6

being "[d]etained by the Department of Homeland Security" "[p]ursuant to the authority

contained in section 236 [8 U.S.C. § 1226] of the Immigration and Nationality Act and part

236 of title 8, Code of Federal Regulations."   ECF No. 22-3; *see* ECF No. 22 ¶ 9.   None

of these documents reference Jose being arrested or detained under authority of 8 U.S.C.

§ 1225.  *See* ECF Nos. 22-1, 22-2, 22-3, 22-6.

On June 27, 2025, Jose filed a motion for a bond hearing with the immigration court

at Fort Snelling, Minnesota, pursuant to 8 C.F.R. § 1003.19.  *See* ECF No. 22-4 at 2.  On

July 8, 2025, ICE issued Interim Guidance Regarding Detention Authority for Applicants

for Admission to all ICE Employees ("Interim Guidance").  *See* ECF Nos. 2-1, 2-7.  The

Interim Guidance, prepared "in coordination with the Department of Justice," states that

the Department of Homeland Security "revisited its legal position on detention and release

authorities," and "determined that section 235 of the Immigration and Nationality Act

(INA)," 8 U.S.C. § 1225, "rather than section 236," 8 U.S.C. § 1226, "is the applicable

immigration detention authority for all applicants for admission."  ECF No. 2-7 at 1.  The

Interim Guidance further states:

> An "applicant for admission" is an alien present in the United
> States who has not been admitted or who arrives in the United
> States, whether or not at a designated port of arrival.  INA
> § 235(a)(1).  Effective immediately, it is the position of DHS
> that such aliens are subject to detention under INA § 235(b)
> and may not be released from ICE custody except by INA
> § 212(d)(5) parole.   These aliens are also ineligible for a
> custody redetermination hearing ("bond hearing") before an
> immigration judge and may not be released for the duration of
> their removal proceedings absent a parole by DHS.   For
> custody purposes, these aliens are now treated in the same
> manner that "arriving aliens" have historically been treated.
> The only aliens eligible for a custody determination and release

> on recognizance, bond, or other conditions under INA § 236(a) during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c).
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286.

*Id.* at 1–2 (bolding and italics removed).

On July 9, 2025, Immigration Judge Monte Miller denied Jose's bond motion, stating:

> [Jose] is not eligible for bond because he's charged under INA 212 and he entered without inspection as such he's an "applicant for admission" and pursuant to INA section 235(b)(2)(a) and Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025).

ECF No. 22-7 ([sic] throughout). On July 22, 2025, Jose appealed the immigration court's decision to deny a bond hearing to the Board of Immigration Appeals. ECF No. 22-10. That appeal remains pending. On July 23, 2025, an Immigration Judge held a removal hearing at which Jose admitted to the allegations against him and conceded the single charge of inadmissibility in the Notice to Appear. *See* ECF No. 22 ¶ 17.

On July 29, 2025, Jose filed his Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking his immediate release, or alternatively, that Respondents be ordered to hold a bond hearing. *See* Pet. The Petition and its requested

relief are premised on Jose's position that he was detained under 8 U.S.C. § 1226(a)(1) and thus is entitled to a bond hearing. *See id.* ¶¶ 82–111 (Counts 1–6)[4] & at 28 (Prayer for Relief).

On July 30, 2025, Jose filed an emergency motion for a temporary restraining order, requesting that this Court: (1) temporarily enjoin Respondents from moving Jose outside of the District of Minnesota while this matter is pending; and (2) order Respondents to provide Jose a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. ECF No. 4 at 3. In a Report and Recommendation and Order dated July 31, 2025, Magistrate Judge Dulce J. Foster recommended granting the motion to the extent it sought to enjoin Respondents from moving Jose outside of the District of Minnesota while the matter is pending and ordered Respondents to provide further briefing regarding the request for a bond hearing. *See* R&R [ECF No. 10] at 2, 6–7. Respondents objected to the R&R. *See* ECF No. 13. On August 4, 2025, this Court accepted the R&R, ordering that "Respondents are enjoined from moving Petitioner outside the District of Minnesota until August 19,

---

[4]     Count 1 seeks a declaration that Jose is detained pursuant to 8 U.S.C. § 1226(a)(1), not § 1225(b)(2), and thus eligible for release from custody, *see* Pet. ¶¶ 82–85; Count 2 alleges a violation of 8 U.S.C. §§ 1226(a) and 1225(b)(2) on the premise that § 1226, not § 1225, governs Jose's detention, and thus that he is entitled to a bond hearing, *see* Pet. ¶¶ 86–91; Count 3 alleges a violation of the Fifth Amendment Due Process Clause of the United States Constitution based on the denial of a bond hearing under § 1226, *see* Pet. ¶¶ 92–94; Count 4 alleges a violation of certain federal regulations related to a § 1226 bond hearing, *see* Pet. ¶¶ 95–99; Count 5 alleges a violation of the Administrative Procedures Act based on DHS and the Immigration Court recently adopting a policy and practice to detain individuals under § 1225(b)(2) without explanation for their change in position, *see* Pet. ¶¶ 100–05; and Count 6 alleges a violation of the Administrative Procedures Act based on Respondents' adoption of no-bond policies without notice and comment, *see* Pet. ¶¶ 106–11.

2025." ECF No. 15 at 3. Then, after the Court held a status conference with the parties,

ECF No. 16, Respondents submitted a letter to the Court, agreeing

> not to move Petitioner out of the District of Minnesota until
> September 5, 2025 or the resolution of the pending habeas
> matter, whichever comes earlier, with one caveat: in the event
> of an unforeseen circumstance or contingency and consistent
> with Petitioner's original request, ICE reserves the option, with
> 72 hours notice, to apply to the Court for permission to
> withdraw from this commitment or to move to dissolve any
> Order memorializing this commitment.

ECF No. 18.

On August 8, 2025, Immigration Judge Miller issued an order memorializing the

reasoning behind his denial of a bond hearing. ECF No. 22-13. Immigration Judge Miller

characterized the issue before him as "whether the immigration judge has jurisdiction to

review [DHS's] bond determination for an individual who is an 'applicant for admission'

under section 235 of the Immigration and Nationality Act." *Id.* at 1. Immigration Judge

Miller concluded that he did not have jurisdiction to redetermine Jose's bond "under

section 236 of the INA," 8 U.S.C. § 1226, because Jose "is subject to mandatory detention

under section 235 of the INA," 8 U.S.C. § 1225. *Id.*

On August 13, 2025, Jose filed an application for relief from removal. *See* ECF No.

22 ¶ 21. Immigration Judge Kalin Ivany scheduled an individual merits hearing on Jose's

removal proceedings for September 29, 2025, and issued a scheduling order for the parties'

submissions. *See* ECF Nos. 22 ¶ 21, 22-14.

III

District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's power includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see Aditya W.H. v. Trump*, No. 25-cv-1976 (KMM/JFD), --- F. Supp. 3d ---, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (citing cases). The burden is on the petitioner to prove illegal detention by a preponderance of the evidence. *See Aditya*, 2025 WL 1420131, at *7 (collecting cases); *see also Mohammed H. v. Trump*, --- F. Supp. 3d ---, No. 25-cv-1576 (JWB/DTS), 2025 WL 1692739, at *2 (D. Minn. June 17, 2025).

The issue here is narrow. Jose does not seek to challenge Respondents' initiation of removal proceedings against him. *See* ECF No. 23 at 3. He has not requested staying, enjoining, or otherwise terminating the removal proceedings. *Id.* And he is not challenging a final removal order. Having considered the parties' arguments and submissions in depth, I understand Jose to seek resolution of a discrete, purely legal question that can be resolved considering the statutory framework of § 1226 and the undisputed facts—namely, whether a non-citizen arrested and detained under authority of 8 U.S.C. § 1226 is subject to § 1226's discretionary detention scheme rather than § 1225(b)(2)'s mandatory detention framework. To answer this question, it is not necessary to address the parties' arguments regarding whether Respondents may lawfully proceed with arresting and detaining a non-citizen

under § 1225 versus § 1226 in the first instance, whether pursuant to the statutory framework or the Interim Guidance.

A

Respondents argue that Jose has failed to exhaust his administrative remedies. *See* ECF No. 21 at 15–17. Respondents acknowledge there is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention in federal court. *See id.* at 16 (citing *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention."). "The exhaustion requirement for § 2241 petitions is judicially created, not statutorily mandated, so when considering it, 'sound judicial discretion governs.'" *Gant v. King*, No. 23-cv-1766 (NEB/ECW), 2023 WL 6930764, at *2 (D. Minn. July 7, 2023) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citing cases), *superseded by statute on other grounds as recognized by Woodford v. Ngo*, 548 U.S. 81, 84–85 (2002)), *R. & R. adopted*, 2023 WL 6910771 (D. Minn. Oct. 19, 2023); *see Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) ("[O]ur jurisdiction to decide this case is not affected by Lueth's alleged failure to exhaust his administrative remedies because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional."). When exercising that discretion, federal courts must "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146; *see also, e.g.*, *Johnson v. Eischen*, No. 22-cv-1039 (ECT/ECW), 2023 WL 2563148, at *4 (D. Minn. Feb. 22, 2023) (quoting *McCarthy*),

12

*R. & R. adopted*, 2023 WL 2560838 (D. Minn. Mar. 17, 2023). "Courts have concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose." [5] *Johnson*, 2023 WL 2563148, at *4 (citing *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (noting that Government waived exhaustion requirement by conceding that use of grievance procedure would be futile)).

Respondents advance two arguments to support the exercise of prudential exhaustion, but neither is convincing. First, Respondents argue that exhaustion should be required as a prudential matter because "the Court would likely benefit from the BIA's

---

[5]    It doesn't matter, but the parties do not address who carries the burden to show exhaustion (or lack thereof) in this context. *See* ECF Nos. 1, 21, 23. Some courts have held that exhaustion is an affirmative defense and that respondents to a § 2241 habeas petition bear the burden to establish a petitioner's failure to exhaust. *See Jones v. Fikes*, No. 20-cv-1341 (SRN/HB), 2020 WL 8513799, at *4 (D. Minn. Nov. 2, 2020), *R. & R. adopted*, 2021 WL 533700 (D. Minn. Feb. 12, 2021); *Elliott v. Paul*, No. 18-cv-403 (NEB/KMM), 2018 WL 6729658, at *8 (D. Minn. Nov. 14, 2018), *R. & R. adopted*, 2018 WL 6727064 (D. Minn. Dec. 20, 2018). Other courts addressing the exhaustion burden in the context of § 2241 habeas immigration petitions have found that the party moving to waive the prudential exhaustion requirement bears the burden of demonstrating that prudential exhaustion should be waived. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1250–51 (W.D. Wash. 2025) ("The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of [the following] factors applies": "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." (quotation omitted)) (citing *Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019)); *see also Buendia-Caldera v. United States*, No. 3:24-cv-596-CWR-LGI, 2025 WL 1680020, at *1 (S.D. Miss. Mar. 31, 2025) ("Exceptions to the exhaustion requirement apply only in extraordinary circumstances, and the petitioner bears the burden of demonstrating the futility of administrative review." (citation modified)). The parties do not cite, and I have not found, binding Eighth Circuit authority addressing this question in this context.

expertise" in addressing "how an agency's 'longstanding practice' affects the statutory analysis" here. ECF No. 21 at 16. No doubt the BIA has subject-matter expertise regarding individual bond decisions. But where, as here, a district court is asked to decide a purely legal question on an undisputed fact record—namely, the narrow question of whether a non-citizen is entitled to a bond hearing under 8 U.S.C. § 1226(a) when that section provided the authority for his arrest and detention—the "administrative appellate record is not necessary to resolve [the] purely legal question[]." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1251 (W.D. Wash. 2025) (citing *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017)); *see Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *5 (D. Mass. July 7, 2025); *Salad v. Alaska Dep't of Corr.*, 769 F. Supp. 3d 913, 921 (D. Alaska Mar. 7, 2025); *cf. Vang v. Eischen*, No. 23-cv-721 (JRT/DLM), 2023 WL 5417764, at * 3 (D. Minn. Aug. 1, 2023) ("There is no useful purpose to proceeding through the administrative remedy process where the petitioner presents a pure question of law."). In other words, this is not the type of case "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding," and thus where "the rationale for requiring [court-imposed] exhaustion is at its greatest." *Agha v. Holder*, 743 F.3d 609, 616 (8th Cir. 2014) (quoting *Sims v. Apfel*, 530 U.S. 103, 110 (2000)). Second, Respondents argue that "judicial intervention may stop the flow from immigration courts to the BIA and redirect it—prematurely, as here—to the federal courts." ECF No. 21 at 17. Courts have rejected this argument, finding that resolution of issues such as the Court faces here "may answer a recurring legal question" that may perhaps "reduce the number of future habeas petitions." *Rodriguez*, 779 F.3d at 1252; *see Salad*, 769 F. Supp. 3d at 922. These

claims-processing concerns are important, but they are outweighed here by time constraints and the potential injury to Jose if his claim is not adjudicated promptly.

Applying the prudential exhaustion requirement is not warranted here.[6]  Time is of the essence.  Jose filed his appeal on July 16, 2025, *see* ECF No. 22-10 at 2, and his removal hearing is scheduled for September 29, 2025, *see* ECF No. 22-14 at 1.  Documents filed pursuant to a Freedom of Information Act request to the Executive Office of Immigration Review in another federal district court, of which this Court takes judicial notice, reflect that on average in 2024, it took the BIA 204 days to adjudicate an appeal of an immigration judge bond decision.  *See Rodriguez*, 779 F. Supp. 3d at 1248; *see also Gomes*, 2025 WL 1869299, at *5.  It seems highly unlikely that Jose's BIA appeal will be addressed before he may be ordered removed, perhaps mooting any bond hearing before it can occur.  And there is no question that Jose will suffer irreparable harm if he is denied the opportunity for a bond hearing.  *See Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (Doty, J.) (recognizing that "loss of liberty" is "perhaps the best example of irreparable harm").  In these circumstances, and where the underlying factual record is straightforward and undisputed, waiver of exhaustion is warranted.  *See Gomes*, 2025 WL 1869299, at *5 (waiving prudential exhaustion requirement where denial of bond was based on a legal

---

[6]     Jose argues that prudential exhaustion is not required because the Interim Guidance was developed in conjunction with the Department of Justice, and thus the BIA has "predetermined the issue before it."  *See* ECF No. 23 at 6 (quoting *McCarthy*, 503 U.S. at 148).  Jose references "unpublished decisions affirming the position" of the Interim Guidance, but he cites no supporting legal authority.  *See id.*  Jose also argues that prudential exhaustion is not required because the BIA lacks jurisdiction to rule upon the constitutionality of the Act and its regulations.  Pet. ¶ 28 (collecting cases); ECF No. 23 at 7.  The petition will be resolved on non-constitutional grounds.

conclusion regarding the interaction between §§ 1225(b)(2) and 1226 (and not any factual determinations particular to the case), the "underlying factual record [was] straightforward and undisputed," Gomes was likely to suffer irreparable harm if he was unable to seek habeas relief until after the BIA decided his appeal, and Gomes's liberty interests "weigh[ed] heavily against requiring administrative exhaustion").

B

Respondents argue that the Court lacks jurisdiction to decide Jose's habeas petition under 8 U.S.C. § 1252(a)(5), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(g). *See* ECF No. 13 at 1–6; ECF No. 21 at 15–22. As a rule, federal district courts do not possess subject-matter jurisdiction to adjudicate claims that directly or indirectly challenge a removal order. "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ." 8 U.S.C. § 1252(a)(5); *see also Akinmulero v. Holder*, 347 F. App'x 58, 60–61 (5th Cir. 2009). That judicial review will consider "all questions of law and fact, including interpretation and application of constitutional and statutory provisions" related to that order of removal. 8 U.S.C. § 1252(b)(9). Except as provided in § 1252, and

> notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of the Department of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

16

8 U.S.C. § 1252(g); *Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017); *see Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (stating § 1252(g) is "narrow[]" in that it "applies only to three discrete actions," not all actions that may be part of deportation process); *Jennings*, 583 U.S. at 294 ("We did not interpret this language [in § 1252(g) to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." (citing *Reno*, 525 U.S. at 482–83)); *Aguilar Maldonado v. Olson*, --- F. Supp. 3d. ---, No. 25-cv-3142 (SRN/SGE), 2025 WL 2374411, at *5–6 (D. Minn. Aug. 15, 2025). "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno,* 525 U.S. at 485 n.9. Notably, however, the Eighth Circuit has "carved out an exception to § 1252(g) for a habeas claim raising a pure question of law." *Silva*, 866 F.3d at 941.

Sections 1252(a)(5) and (b)(9) do not deprive the Court of jurisdiction here. Jose's Petition does not seek review of a removal order. No removal order has issued. *See Jennings*, 583 U.S. at 294–95 ("For present purposes, it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.") (plurality opinion); *see also Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) (rejecting Government's § 1252(a)(5) and (b)(9) jurisdictional challenges because, "even if [Ozturk's] claims have a relationship to 'pending removal proceedings,' her claims do not themselves challenge 'removal

17

proceedings' and thus § 1252(b)(9)'s 'channeling function has no role to play.'" (quotations omitted); *Aditya W.H.*, 2025 WL 1420131, at *9 (concluding that § 1252(b)(9) does not present a jurisdictional bar because the petitioner's requested relief was not a review of a final order of removal)); *Aguilar Maldonado*, --- F. Supp. 3d ---, 2025 WL 2374411, at *6–8 (same).

Nor do § 1252(g)'s jurisdiction-stripping provisions apply. First, Jose's habeas claims "fall outside of § 1252(g)'s narrow jurisdictional bar," because he does not seek review of a decision to commence proceedings, adjudicate cases, or execute a removal order. *See Ozturk*, 136 F.4th at 397. Rather, Jose's claims challenge his detention, and specifically his detention under § 1226 without being afforded a bond hearing pursuant to § 1226's discretionary detention scheme. Respondents argue that § 1252(g) "further bars district courts from considering challenges to the *method* by which ICE chooses to commence removal proceedings." ECF No. 13 at 3. At least one judge in this District has rejected this argument, and I find that analysis persuasive. *See Aguilar Maldonado*, 2025 WL 2374411, at *5–6 (first citing *Reno*, 525 U.S. at 482–85; and then citing *Jennings*, 583 U.S. at 294). Read narrowly, as the Supreme Court requires, § 1252(g) does not deprive the Court of jurisdiction to consider the narrow legal question of whether a non-citizen detained under authority of § 1226 is entitled to a bond hearing under § 1226's discretionary detention framework. This "purely legal" question fits the exception to § 1252(g)'s jurisdiction-stripping provision, as it can be decided in the abstract on an undisputed factual record. *See Nicholas L.L. v. Barr*, No. 19-cv-2543 (ECT/TNL), 2019 WL 4929795, at *3–5 (D. Minn. Oct. 7, 2019).

18

IV

Regarding that question, as discussed above, § 1226 provides a discretionary detention framework and corresponding "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 847 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also* 8 C.F.R. § 1003.19. Respondents do not disagree with this basic understanding. *See* ECF No. 21 at 5–6. Rather, Respondents maintain that Jose was detained under § 1225(b). The problem is, Respondents point to no record evidence suggesting that Jose was arrested and detained under § 1225. Jose was arrested on a warrant pursuant to § 1226, *see* ECF No. 22-2 at 1, and detained under authority of § 1226 and its implementing regulations, *see* ECF No. 22-3.[7] Of course, available litigation procedures enable a party to change its position after

---

[7]    The Interim Guidance itself indicates that those arrested and detained pursuant to § 1226 are subject to § 1226's discretionary detention scheme, and that further action is needed to proceed under § 1225:

> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because *Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations*. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, *if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286.*

ECF No. 2-7 at 2 (emphasis added). Here, ICE issued Jose an I-286 Notice of Custody Determination citing § 1226, *see* ECF No. 22 ¶ 9; ECF No. 22-3, and there is no factual record evidence or argument to support that Jose's Form I-286 was "affirmatively cancel[ed]" pursuant to this Interim Guidance.

a case is commenced. In civil cases, for example, parties may amend their pleadings. *See* Fed. R. Civ. P. 15. Here, Respondents do not argue that they exercised some available procedural right to change the legal basis of Jose's arrest and detention. Nor do Respondents cite authority supporting the idea that they possessed that unilateral right. Jose is entitled to a bond hearing under § 1226's discretionary detention framework.

To support their position that § 1225 applies, Respondents cite to *Matter of Q. Li*, 29 I & N Dec. 66 (B.I.A. 2025). ECF No. 21 at 4, 24. There, the BIA held that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a*)." Matter of Q. Li*, 29 I & N Dec. at 69. *Matter of Q. Li* is distinguishable. The case concerns a non-citizen "arrested and detained without a warrant." *Id. Matter of Q. Li* does not undermine or conflict with the conclusion that Jose—who was arrested on a warrant and detained explicitly pursuant to § 1226(a)—is subject to § 1226(a)'s discretionary detention regime. *See Gomes v. Hyde*, 2025 WL 1869299, at *7.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Petitioner Jose J.O.E.'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 [ECF No. 1], is **GRANTED IN PART**.

2.     Respondents shall provide Petitioner Jose J.O.E. with a bond hearing under 8 U.S.C. § 1226(a) within 7 days of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 27, 2025                         s/ Eric C. Tostrud
                                                Eric C. Tostrud
                                                United States District Court